**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JOSIAH WALKER,

Plaintiff,

v.

REGENTS OF THE UNIVERSITY OF MICHIGAN, et al.,

Defendants.

Case No. 2:26-cv-11674-LJM-KGA

Hon. Laurie J. Michelson

Mag. Judge Kimberly G. Altman

---

**DEFENDANTS AMERISHIELD PROTECTION GROUP D/B/A CITY SHIELD SECURITY SERVICES, JAMES KINCANNON, KENNETH CRAIG, DOUG BAYER, AND LEE VICTORIAN'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

Defendants Amerishield Protection Group d/b/a City Shield Security Services ("City Shield"), James Kincannon, Kenneth Craig, Doug Bayer, and Lee Victorian (collectively, the "City Shield Defendants"), by and through their undersigned counsel, Maddin, Hauser, Roth & Heller, P.C., respectfully move, pursuant to Fed.

R. Civ. P. 12(b)(6), to dismiss Plaintiff's Complaint and Demand for Jury Trial (ECF No. 1) with prejudice, and in its entirety, due to Plaintiff's failure to state a claim upon which relief can be granted. The authority in support of this Motion is set forth in the accompanying Brief in Support.

In accordance with L.R. 7.1(a)(2)(A), on September 2, 2026, counsel for the City Shield Defendants there was an email conference with Plaintiff's counsel in which the movant explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought.

WHEREFORE, the City Shield Defendants respectfully request that the Court: (1) grant their Motion to Dismiss Plaintiff's Complaint and Demand for Jury Trial; (2) dismiss Plaintiff's Complaint and Demand for Jury Trial with prejudice and in its entirety; and (3) award any other relief in the City Shield Defendants' favor that the Court deems fair and just.

Respectfully submitted,

/s/ *David E. Hart*

David E. Hart (P45084)
Maddin, Hauser, Roth & Heller, P.C.
*Attorneys for City Shield Defendants*
One Towne Square, Fifth Floor
Southfield, MI 48076
(248) 354-4030
dhart@maddinhauser.com

Dated: September 2, 2026

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JOSIAH WALKER,

Plaintiff,

v.

REGENTS OF THE UNIVERSITY OF MICHIGAN, et al.,

Defendants.

Case No. 2:26-cv-11674-LJM-KGA

Hon. Laurie J. Michelson

Mag. Judge Kimberly G. Altman

**DEFENDANTS AMERISHIELD PROTECTION GROUP D/B/A CITY SHIELD SECURITY SERVICES, JAMES KINCANNON, KENNETH CRAIG, DOUG BAYER, AND LEE VICTORIAN'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## <u>ISSUES PRESENTED</u>

I. Whether Counts 1-4 must be dismissed because the City Shield Defendants did not act under the color of state law.

Plaintiff answers, "No."

City Shield Defendants answer, "Yes."

II. In the alternative, whether Counts 1-4 must be dismissed because the City Shield Defendants are entitled to qualified immunity.

Plaintiff answers, "No."

City Shield Defendants answer, "Yes."

III. Whether Count 5 must be dismissed because the City Shield Defendants did not act with discriminatory animus.

Plaintiff answers, "No."

City Shield Defendants answer, "Yes."

IV. Whether Count 6 must be dismissed because the City Shield Defendants were acting with appropriate authority.

Plaintiff answers, "No."

City Shield Defendants answer, "Yes."

## MOST APPROPRAITE AUTHORITY FOR REQUESTED RELIEF

Fed. R. 12(b)(6)
*Filarsky v. Delia*, 566 U.S. 377 (2012)
*Griffin v. Breckenridge*, 403 U.S. 88 (1971)
*Jackson v. Metro. Edison Co.*, 419 U.S. 345 (1974)
*Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898 (6th Cir. 2004)
*Nastal v. Henderson & Assocs. Investigations, Inc.*, 471 Mich. 712; 691 N.W.2d 1 (2005)
*Wolotsky v. Huhn*, 960 F.2d 1331 (6th Cir. 1992)

# INTRODUCTION

Defendants AmeriShield Protection Group d/b/a City Shield Security Services ("City Shield"), James Kincannon ("Kincannon"), Kenneth Craig ("Craig"), Doug Bayer ("Bayer"), and Lee Victorian ("Victorian," together with Kincannon, Craig, and Bayer, the "Individual City Shield Defendants," and collectively with City Shield, the "City Shield Defendants") respectfully move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing with prejudice all claims asserted against them in Plaintiff Josiah Walker's Complaint. Plaintiff's claims against the City Shield Defendants fail as a matter of law for three reasons. First, because Plaintiff cannot plausibly allege that a private security company is a "state actor," the constitutional claims must be dismissed; second, to the extent the City Shield Defendants are considered state actors, they are entitled to qualified immunity; and third, as to Plaintiff's state law claim, Plaintiff's Complaint fails to state a claim upon which relief can be granted.

The Complaint is replete with legal conclusions "couched as factual allegations" that this Court is not required to accept as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stripped of these conclusory assertions, the Complaint fails to state a plausible claim for relief against the City Shield Defendants on any count. This Court should dismiss the Complaint in its entirety as to these Defendants.

## **STATEMENT OF FACTS**[1]

Plaintiff Josiah Walker is a student at the University of Michigan who participated in demonstrations on campus beginning in approximately Spring 2024. (Compl. ¶¶ 1–5). The Complaint names as defendants the Regents of the University of Michigan, various University administrators and employees, as well as the City Shield Defendants. (Compl. ¶¶ 10–27).

City Shield is a private security company incorporated in Michigan. (Compl. ¶ 23). City Shield is a professional investigator agency, licensed by the state of Michigan, License No. 3701207901.[2] The University contracted with City Shield to provide security services relating to campus protest activities. (Compl. ¶ 23). The Individual City Shield Defendants are City Shield employees who performed services pursuant to that contract. (Compl. ¶¶ 24–27).

The Complaint alleges that City Shield employees conducted surveillance of Plaintiff from approximately May 2024 through several subsequent months. (Compl. ¶¶ 126-128, 130, 137–151). With respect to the Individual City Shield Defendants, the Complaint alleges the following specific conduct:

---

[1] The City Shield Defendants set forth the following facts as alleged in the Complaint for the purposes of this motion only, without admitting their truth.

[2] Licenses can be verified online through the Licensing and Regulatory Affairs website:https://aca-prod.accela.com/MICLEAR/GeneralProperty/PropertyLookUp.aspx?isLicensee=Y&TabName=APO

- Defendant Craig's alleged misconduct amounts to observing Plaintiff at a Bangladesh demonstration—an event unrelated to any of Plaintiff's claimed pro-Palestinian activities—and entering a student union building where Plaintiff was present. Craig allegedly filed a report stating that Plaintiff acted "suspiciously." (Compl. ¶¶ 137, 142, 213).

- Defendant Bayer's alleged conduct is limited to two isolated interactions, both of which occurred only after Plaintiff approached Bayer. On one occasion, Bayer allegedly pretended to be deaf; on another, Bayer allegedly accused Plaintiff of attempting to rob him. (Compl. ¶¶ 144, 149–151). Plaintiff initiated both encounters.

- Defendant Victorian is alleged only to have engaged in unspecified "similar tactics" to those of other individual defendants. (Compl. ¶ 146). The Complaint fails to attribute any specific conduct to Victorian whatsoever.

- Defendant Kincannon's sole alleged wrongdoing is filing a report claiming that Plaintiff "assaulted" him after Plaintiff recording Kincannon with a cellphone camera. (Compl. ¶¶ 210–212).

Criminal charges that were brought against Plaintiff were subsequently dismissed by the Michigan Attorney General in May 2025. (Compl. ¶ 214). Notably, all the surveillance took place in public areas. Although at some points the surveillance took place in campus buildings that required access cards to enter, the City Shield Defendants were not surveilling Plaintiff in any area in which he had a reasonable expectation of privacy, as even these areas were open to all individuals with access cards. The Complaint fails to allege any facts that the City Shield Defendants were engaged in any actions that restrained Plaintiff or interfered with his employment with the University.

The Complaint asserts six counts against the City Shield Defendants: First Amendment retaliation under 42 U.S.C. § 1983 (Count 1); Due Process violations under § 1983 (Count 2); Fourth Amendment violations under § 1983 (Count 3); Equal Protection violations under § 1983 (Count 4); conspiracy under 42 U.S.C. § 1985(3) (Count 5); and civil stalking under Michigan law (Count 6).

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

While the Court must construe the complaint in the light most favorable to the plaintiff and accept well-pleaded factual allegations as true, the Court "need not

accept as true legal conclusions or unwarranted factual inferences." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "[A] legal conclusion couched as a factual allegation" is not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Kolley v. Adult Protective Servs.*, 725 F.3d 581, 585 (6th Cir. 2013). The Court may also draw on "judicial experience and common sense" in evaluating the plausibility of the claims. *Crawford v. Tilley*, 15 F.4th 752, 762 (6th Cir. 2021).

## <u>ARGUMENT</u>

### I. COUNTS I THROUGH 4 SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO PLAUSIBLY ALLEGE THAT THE CITY SHIELD DEFENDANTS ACTED UNDER COLOR OF STATE LAW.

Section 1983 provides a cause of action only against persons who act "under color of" state law. 42 U.S.C. § 1983; *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978). Because City Shield is a private company and the individual City Shield Defendants are private employees, Plaintiff bears the burden of plausibly alleging that their conduct is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). The Sixth Circuit recognizes three tests for determining state action by a private party: (1) the public function test; (2) the state compulsion test; and (3) the nexus test. *Memphis, Tenn. Area Local, Am. Postal Workers Union*

*v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004); *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). Plaintiff fails to satisfy any of these tests.

**A. The Public Function Test**

The public function test "requires that the private entity exercise powers which are traditionally exclusively reserved to the state." *Memphis*, 361 F.3d at 905. The provision of security services pursuant to a private contract does not transform a private company into a state actor, just as the provision of other government-contracted services, such as electricity, communications, or transportation, does not convert the private provider into the government. *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352–53 (1974).

The question of whether private security officers are "state actors" largely turns on whether the security officers perform certain functions that cross the line from private action to state action. *Durante v. Fairlane Town Center*, 201 Fed. Appx. 338, 341 (6th Cir. 2006). Other circuits addressing whether a security guard is a state actor under the "public function" test also looked to whether the guards were considered officers under the applicable statute. *See e.g.*, *Payton v. Rush-Presbyterian-St. Luke's Medical Center*, 184 F.3d 623, 628-30 (7th Cir. 1999) (holding the private security officers were state actors where they were required to be licensed and appointed by the city, subject to investigation by the superintendent of police, required to wear badges issued by the police superintendent, subject to all

rules and regulations governing police officers, possessed powers of regular police officers within their places of employment, and were required to report in person to the superintendent of the police as he directed); *cf. Wade v. Byles*, 83 F.3d 902, 905-06 (7th Cir. 1996) (holding the private security guard was not a state actor because he was employed by a private security firm that contracted with the Chicago Housing Authority ("CHA") to provide security in lobbies of certain housing projects, the CHA maintained its own police force, and the powers and duties of the private security personnel were far more limited; they wore uniforms identifying the private employer, their primary responsibility was to control access to the building, and the private officers would call the CHA force if they needed an individual to leave rather than use their own force). Courts in the Sixth Circuit have used these cases to assist in their own determination of whether a private security guard is a state actor. *See e.g.*, *Smith v. Detroit Entertainment L.L.C.*, 338 F. Supp. 2d 775 (E.D. Mich. 2004) (relying on both *Payton* and *Wade* to determine that the private security guards at issue were not state actors). In *Romanski v. Detroit Entm't, L.L.C.*, the Sixth Circuit determined private security officers working in a casino acted under the color of state law when they detained, arrested, and escorted a woman from the casino premises. 428 F.3d 629, 638 (6th Cir. 2005). Essential to this analysis was that the security officers in question were licensed under MCL § 338.1079, which provides certain powers including "the authority to arrest a person without a warrant as set

forth for public peace officers." *Romanski*, 428 F.3d at 638 (quoting MCL § 338.1080); *see also Fareed v. G4S Secure Solutions (USA) Inc.*, 942 F. Supp. 2d 738 (E.D. Mich. 2013) (holding private security guards working at a courthouse were state actors where the plaintiff alleged that the private guards were empowered by the district court to perform security work typical of court security officers).

Here, City Shield is a licensed private investigator agency, and the Individual City Shield Defendants worked under City Shield's license to provide private investigator services, none of them were independently licensed. Additionally, unlike the security guard statute, the private investigator statute does not confer police powers to licensed agencies or individuals. Critically, private security and surveillance services are not powers traditionally exclusively reserved to the state; private security companies, private investigators, and private surveillance firms operate lawfully throughout the United States without exercising any state power. To the extent City Shield and its officers were performing security guard services, they do not fall under the categories specified in MCL § 338.1079, meaning, they do not have the same police power authority as those security guards licensed pursuant to MCL § 338.1079. The Complaint does not, and cannot, allege that City Shield exercised powers such as arrest authority, the power to issue trespass bans, the authority to conduct searches, or any other power "traditionally exclusively reserved" to the state. With regard to all conduct relevant to this case, the University

engaged the City Shield Defendants "to monitor, surveil, and report on student protest activities and student protestors' private activities." (Compl., ¶ 28). These are not powers traditionally reserved to the state, nor do these contractual activities empower the City Shield Defendants to perform security work typical of state officers. Accordingly, the public function test is not satisfied.

**B. The Nexus Test**

The nexus test requires "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson*, 419 U.S. at 351. The mere existence of a contractual relationship between the University and City Shield is insufficient to establish the requisite nexus. *See Howell v. Father Maloney's Boys' Haven, Inc.*, 976 F.3d 750, 754 (6th Cir. 2020) (holding a contract for services between the defendant and the state, together with a license to operate the home, did not create a state actor relationship); *Manhattan Community Access Corporation v. Halleck*, 587 U.S. 802 (2019); *Simescu v. Emmet County Dept. of Social Services*, 942 F.2d 372, 375 (6th Cir. 1991) ("The mere existence of a contract between a governmental agency and a private party is insufficient to create state action."). Additionally, the fact that City Shield was licensed by the state does not, by itself, convert its action into that of the state. *Bier v. Fleming*, 717 F.2d 308, 311 (6th Cir.), *cert. denied*, 465 U.S. 1026 (1984) (explaining that the "mere fact that a business is subject to state

regulation does not by itself convert its action into that of the State."); *see also Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974). Here, the mere fact that City Shield had a contract with the University to provide licensed private investigation services is insufficient to establish a nexus between the University and City Shield. Similarly, the Individual City Shield Defendants were not operating as off-duty officers and could not reasonably have been perceived as University police officers. *See Smith v. Detroit Entertainment L.L.C.*, 338 F. Supp. 2d 775, 783 (E.D. Mich. 2004) (explaining that there was no symbiotic relationship or nexus where the casino's security personnel were not off-duty officers and could not reasonably have been perceived as police officers even though they were wearing uniforms). The Complaint contains no allegations that the University directed, supervised, or even knew about City Shield's specific methods of surveillance. Similarly, the Individual City Shield Defendants did not hold themselves out as operating on behalf of the University. Even assuming the University generally contracted for security monitoring of protest activity, the *manner* in which City Shield employees carried out that monitoring was City Shield's independent decision, not the University's. A general contract to provide services does not create a nexus as to the contractor's independent operational choices.

**C. The State Compulsion Test**

The state compulsion test "requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state." *Memphis*, 361 F.3d at 905. In other words, Plaintiff would have to establish that the University significantly encouraged or somehow coerced the private party to take a particular action so that the choice is really that of the state. *Id*. "More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives." *Smith v. Detroit Entertainment L.L.C.*, 338 F. Supp. 2d 775, 782 (E.D. Mich. 2004) (quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)). The mere fact that state police officers are involved in events does not, without more, establish that the state police exercised control over an entity's private security personnel or its policies. *Id*. Here, the University engaged the City Shield Defendants to provide surveillance on campus and to pay particular attention to individuals engaged in certain activities. Any alleged coordination between the University Defendants and the City Shield Defendants would have been pursuant to the contractual relationship. The Complaint is devoid of any allegation that the University compelled the specific conduct at issue. Even accepting that the University desired surveillance of protest activities, there is no allegation that the University compelled or directed City Shield to take specific conduct with respect

to its surveillance. Without allegations that the state compelled the *specific challenged conduct*, the compulsion test is not met.

Because Plaintiff cannot satisfy any test for state action, all § 1983 claims (Counts 1 through 4) against the City Shield Defendants must be dismissed.

## II. IF THIS COURT WERE TO FIND THAT CITY SHIELD IS A STATE ACTOR, CITY SHIELD IS ENTITLED TO QUALIFIED IMMUNITY.

When determining whether a private individual may claim qualified immunity as a defense to a section 1983 claim, a court must look to whether the "tradition of immunity [is] . . . firmly rooted in the common law." *McKnight v. Rees*, 88 F.3d 417, 420 (6th Cir. 1996) (citing *Wyatt v. Cole*, 504 U.S. 158, 164 (1992). Additionally, the court considers whether there are strong public policy reasons supporting the recognition of qualified immunity. *Id*. at 420 (citing *Wyatt*, 504 U.S. at 164-66).

The Supreme Court has held that qualified immunity exists where a private party is temporarily retained by the government to carry out its work. *See e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012). In *Filarsky*, a private attorney was hired by the City of Rialto to conduct an administrative investigation of a firefighter. *Id*. at 381. During the investigation, the attorney consulted with the City employees who had hired him and ultimately received approval from those employees prior to executing his recommended plan. *Id*. The Supreme Court held that the attorney was unquestionably entitled to qualified immunity. *Id*. at 393-94. In reaching this

determination, the Supreme Court noted that common law extended certain protections to individuals engaged in law enforcement activities, using as an example that a Sheriff executing a warrant was "empowered by the common law to enlist the aid of the able-bodied men of the community in doing so." *Id*. at 387-88.

The Supreme Court also distinguished its holding from that in *Richardson v. McKnight*, 521 U.S. 399 (1997)**,** which was "self-consciously 'narrow.'" *Id*. at 393 (quoting *Richardson*, 521 U.S. at 413). In *Richardson*, the Supreme Court refused to find qualified immunity for a "private firm, systematically organized to assume a major lengthy administrative task (managing an institution) with limited direct supervision by the government, [that undertook] that task for profit and potentially in competition with other firms." 521 U.S. 399, 413 (1997). However, in making this holding, the Supreme Court provided an important caveat: "the immunity question has been answered narrowly, in the context in which it arose, and, thus, does not involve a private individual briefly associated with a government body, serving as an adjunct to government in an essential governmental activity, ***or acting under close official supervision***." *Id*. at 400.

The facts in this case are closer to *Filarsky* than *Richardson*. Specifically, the City Shield Defendants were hired on a temporary basis to provide additional protection for the University of Michigan *in addition* to the University Defendants' own police power. The City Shield Defendants received all of their directions from

the University Defendants. Although the City Shield Defendants had some discretion with respect to how they carried out the orders, the ultimate orders were given by the University Defendants without any input from the City Shield Defendants. The City Shield Defendants were engaged to perform a surveillance and investigatory role, not to run the University's police department. Such actions warrant qualified immunity.

## III. COUNT 5 (42 U.S.C. § 1985(3) CONSPIRACY) SHOULD BE DISMISSED FOR FAILURE TO ALLEGE CLASS-BASED ANIMUS

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving a person of equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury. *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983). Critically, "[t]here must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

The Sixth Circuit limits the reach of § 1985(3) to conspiracies "targeting a person based on a classification . . . that would receive heightened scrutiny under the Supreme Court's equal-protection framework." *Post v. Trinity Health-Michigan*, 44 F.4th 572, 578 (6th Cir. 2022) (citing *Browder v. Tipton*, 630 F.2d 1149, 1150 (6th Cir. 1980)). The protected class "must be based upon race or other 'inherent personal characteristics.'" *Webb v. United States*, 789 F.3d 647, 672 (6th Cir. 2015).

Moreover, a "class" within the meaning of § 1985(3) "unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993).

Plaintiff's § 1985(3) claim fails because the Complaint itself reveals that the alleged targeting was based on Plaintiff's pro-Palestinian political viewpoint and activism, not on his race or religion. The Complaint repeatedly alleges that Plaintiff was targeted because of his "viewpoints" and "speech." (See Compl. ¶¶ 5, 57, 229, 237–239.) Pro-Palestinian political advocacy is a viewpoint, not an inherent personal characteristic that triggers heightened scrutiny. Political viewpoint is not a cognizable class under § 1985(3). *See Bray*, 506 U.S. at 269.

Furthermore, "conspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient." Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro, 477 F.3d 807, 832 (6th Cir. 2007) (alteration in original); see also Smith v. Thornburg, 136 F.3d 1070, 1078 (6th Cir. 1998) (dismissing § 1985 claim where there was a "noticeable absence of any evidence of a conspiracy"). The Complaint offers only conclusory allegations of a conspiracy between City Shield and the University, without the specificity required to state a claim. Count 5 should be dismissed.

## IV. COUNT 6 (MICHIGAN CIVIL STALKING) SHOULD BE DISMISSED BECAUSE CITY SHIELD'S CONDUCT SERVED A LEGITIMATE PURPOSE

Michigan's criminal stalking statute defines "harassment" as "conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress." MCL 750.411h(1)(d). Critically, however, "[h]arassment does not include constitutionally protected activity or conduct that serves a legitimate purpose." *Id.*

The Michigan Supreme Court has held that "conduct that serves a legitimate purpose" means "conduct that contributes to a valid purpose that would otherwise be within the law irrespective of the criminal stalking statute." *Nastal v. Henderson & Assocs. Investigations, Inc.*, 471 Mich. 712, 723723; 691 N.W.2d 1 (2005). In *Nastal*, the Michigan Supreme Court addressed this very issue in the context of a private investigation firm, directly analogous to the private security firm at issue here. Specifically, the Michigan Supreme Court noted that surveillance by a licensed private investigator is conduct that serves a legitimate purpose as long as the surveillance serves or contributes to the purpose of obtaining information as permitted under MCL 338.822.

City Shield was contractually retained by the University of Michigan to provide campus security services on a temporary basis in response to increased protests at the University. City Shield is a licensed investigation agency pursuant to

MCL 338.821 *et seq*. Contrary to the allegations in the Complaint, the Individual City Shield Defendants did not need to be individually licensed because they were performing work as employees of the licensed agency. See MCL § 338.834(3) (explaining a licensed agency must issue identification cards to its employees operating as an investigator under the agency's license). The monitoring and observation of campus activities, including protest activities, and the tailing of an individual said to be leading a number of the protests, in furtherance of that contract, serves a legitimate purpose within the meaning of MCL 338.822(e). The Complaint itself establishes that City Shield's presence on campus was pursuant to a contractual obligation to the University to maintain the safety of the University. This contractual security purpose is precisely the type of "valid purpose that would otherwise be within the law" that the *Nastal* court identified as falling outside the statutory definition of harassment.

Because the Complaint's own allegations establish that City Shield's campus presence and monitoring activities served the legitimate purpose of fulfilling its security contract, Plaintiff's civil stalking claim fails as a matter of law. Count 6 should be dismissed.

## **CONCLUSION**

For all of the foregoing reasons, Defendants AmeriShield Protection Group d/b/a City Shield Security Services, James Kincannon, Kenneth Craig, Doug

Bayer, and Lee Victorian respectfully request that this Court grant their Motion to Dismiss and dismiss Counts 1 through 6 of the Complaint with prejudice as to the City Shield Defendants. Alternatively, should this Court find that any claim survives as to City Shield, the individual defendants request dismissal of all claims as to them individually for failure to plead specific facts supporting individual liability.

Respectfully submitted,

/s/ *David E. Hart*
David E. Hart (P45084)
Maddin, Hauser, Roth & Heller, P.C.
*Attorneys for City Shield Defendants*
One Towne Square, Fifth Floor
Southfield, MI 48076
(248) 354-4030
dhart@maddinhauser.com

Dated: September 2, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on **September 2, 2026**, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record registered to receive electronic notices in this case.

/s/ *David E. Hart*
David E. Hart (P45084)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JOSIAH WALKER,<br><br>Plaintiff,<br><br>v.<br><br>REGENTS OF THE UNIVERSITY OF MICHIGAN, et al.,<br><br>Defendants. | Case No. 2:26-cv-11674-LJM-KGA<br><br>Honorable Laurie J. Michelson<br>Mag. Judge Kimberly G. Altman |

**BRIEF FORMAT CERTIFICATION FORM**

I, David E. Hart, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

☒ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☒ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

☒ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);

☒ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

☒ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

/s/ *David E. Hart*
David E. Hart (P45084)
Dated: September 2, 2026